UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 13-80352-CIV-MARRA

GLENN SHERMAN,

      Plaintiff,

v.

WINDSTREAM COMMUNICATIONS, INC.,
a Delaware corporation, as successor by merger
with PAETEC COMMUNICATIONS, INC., a
Delaware corporation

      Defendant.
_____/

## OPINION AND ORDER REMANDING CASE

THIS CAUSE is before the Court upon Plaintiff's Motion for Remand and for Attorney's Fees and Costs Due to Defendant's Improvident Removal [DE 11]. The Court has reviewed all of the papers submitted in connection with this motion and is otherwise duly advised in the premises.

## BACKGROUND

In 2008, the parties entered into a Referral Endorser Agreement whereby Plaintiff would be paid a commission for referring potential customers to Defendant. [DE 1-1 at 7-8]. The crux of the dispute between the parties is whether commissions are owed to Plaintiff based upon the expansion of services by Defendant to a customer initially referred to it by Plaintiff. [*Id.* at 9]. Defendant has taken the position that not only is Plaintiff not owed any additional money, but he was overpaid and owes Defendant money. [DE 4 at 3,¶ 23; at 4, ¶ 28; and at 8-12].

On April 12, 2013, Defendant filed a Notice of Removal [DE 1], removing Case No. 50 2013-CA005346XXXXMB from the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.  Defendant asserts that this Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.  Under § 1332, the Court has subject matter jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  *Id.*  A corporation is deemed to be a citizen of both the state in which it has been incorporated and the state where it maintains its principal place of business.  28 U.S.C. § 1332(c)(1). There is no dispute that complete diversity of citizenship exists between the parties.

At issue is whether the amount in controversy exceeds $75,000. The removed Complaint states that it is an action for damages in excess of $15,000 exclusive of interest, costs and attorney's fees. [DE 1-1 at 5, ¶1].  Count III of the Complaint seeks an accounting because "only the Defendant has access to the information . . ." [DE 1-1 at 13, ¶53].  "Without an accounting, Sherman will be unable to ascertain the amount to which he is entitled, and, therefore, the amount of his damages." [*Id.* at ¶55].  The Complaint goes on to allege: "Although Sherman does not know the exact amount of business and revenue defendant has benefitted from the result of Insight Global's expansion of locations and upgrade of services and products, it would appear, based on the limited information he does know, that he may be entitled to approximately $50,000 in additional commissions." [*Id.* at 14-15, ¶65].

In its Notice of Removal, to support its position that the case meets the $75,000 jurisdictional threshold, Defendant relies upon a settlement demand of $135,430.00 made by Plaintiff after the commencement of the lawsuit.  [DE 1-2].  Plaintiff, however, raises issues in

2

his Motion for Remand that impact the weight to be given to this settlement demand.

Plaintiff claims that because the Complaint did not, on its face, provide a basis upon which to remove this case to federal court, "Defendant's counsel attempted to manufacture a basis for removal.  Under the guise of initiating good faith settlement negotiations and pretending that the Defendant was interested in settling the claim, Defendant's counsel sent an email to [Plaintiff's] counsel inviting a settlement demand." [DE 11 at 2]. This demand reads: "We represent Windstream Communications and have had an opportunity to discuss the Sherman matter with our client.  The client would like to know if Mr. Sherman has a *reasonable* demand at this time.  Please let me know so the client can assess whether it can avoid incurring any further legal fees in this matter." [DE 11-1].

In response, Plaintiff's counsel sent a letter to Defendant's counsel on April 4, 2013, stating, in part, that "[o]ur side is at a disadvantage not yet having a full accounting of the amount to which our client may be entitled up to this point in time, and not knowing for how long our client may be entitled to receive additional commissions." [DE 11-2 at 1].  The letter also states, "we are in the dark at this stage as to how much in commissions our client would be entitled to be paid up to this point and going forward (and, would, therefore be waiving by entering into a global settlement at this time)." [*Id.*].  Later, it notes, "Conceptually, most all parties want to reach a settlement which they believe is 'reasonable'.  Usually, the rub is in the details (to which our client is not yet privy)." [*Id.*].  Notwithstanding the lack of information upon which to base a demand, Plaintiff's Counsel tendered a demand of $135,430, which was arrived at  arbitrarily by multiplying by two the amount previously received in commissions by Plaintiff. [*Id.*].

3

Eight days later, on April 12, 2013, Defendant removed the case to this Court.  On April 17, 2013, Defense Counsel forwarded a copy of a form Residual Referral Endorser Agreement to Plaintiff's Counsel attached to an email in which he explained that Plaintiff did not have this type of agreement.  Defense Counsel explained why Plaintiff had received continuing commissions for a period of time by stating, "It appears that some lower-level folks were mindlessly submitting and rubber-stamping payment requests for Mr. Sherman. We are still getting to the bottom of the cause of the mistake and calculating how much he was overpaid." [DE 17-3].

Defendant did not respond to the settlement demand, and on April 20, 2013, Plaintiff's Counsel reached out to Defense Counsel asking whether he intended to respond to the demand. [DE 11-3].  Defense Counsel responded the same day as follows:

> I apologize for not being clearer but I assumed my emails and our counterclaims made our client's position clear.  As I wrote earlier, it is your client who owes Windstream money, not the other way around.  I'm sure our client would consider a reasonable offer from your client to repay the funds he wrongfully collected.  That said, as far as we know now, there will be no offer of a cash settlement to your client.

[DE 11-4].

Plaintiff's Counsel immediately responded by advising that he intended to move to remand if the amount owed to Plaintiff under his theory of the case was less than $75,000.  He stated that Defendant had this information, and he asked that it be provided to him. [DE 11-5].  When he received no response, on May 6, 2013, Plaintiff's Counsel sent Defense Counsel a draft of Plaintiff's Motion For Remand asking whether he would consent to the granting of the motion.  If he would not consent, Plaintiff's Counsel asked for his consent to the granting of a motion for leave to serve interrogatories on the calculation of the amount Plaintiff was seeking based on

4

how the prior payments were calculated. [DE 11-6].

In response, Defense Counsel wrote:

> Steve, here's what I propose: first, I think your demand was reasonable based on your understanding/belief that Sherman was operating under a residual contract, so I think removal was proper. In other words, doubling what he had received would appear consistent with how a residual agreement would have operated. However, at this exact moment, we do not have from the client an exact calculation of what unpaid commissions Sherman would be entitled to if his contract had been a residual agreement. However, our speculation at this point is that the amount in controversy based on Sherman's interpretation of the contract exceeds $75K.
>
> Obviously, we have no interest in remaining in federal court if the amount in controversy is below $75K. We are trying now to get a calculation from the client of what unpaid commissions would be if Sherman's interpretation of the contract was accurate. Can you give us until the end of the week to come up with that info? Then if the numbers don't support removal, we'll consent to remand. If they do support removal, I'll share the supporting numbers with you showing support for the removal.

[DE 11-7].

Two days later, on May 8, 2013, Defense Counsel provided Plaintiff's Counsel with the

information he had requested.

> As you will see, if Sherman had been given a residual agreement, his maximum payments through today would have been **$58,804** at 4% or **$73,506** at 5%. He's been paid to date **$67,716.75** to date, which means we either owe him a maximum of **$5,789 now** or he owes us **$8,913**.
>
> Now, we also calculated what Sherman would be owed if everything Sherman claims is true . . . he would be owed a maximum additional **$27,341.29.**[1]

---

[1] Appended to Defendant's response to Plaintiff's motion is almost 200 pages of underlying documentation in support of these figures. [DE 17-4].

5

[DE 11-8, emphasis in original].  Six days later, on May 14, 2013, Defense Counsel offered Plaintiff $8,000.00 to settle the case. [DE 11-9].

Plaintiff's Counsel responded to this settlement offer on May 15, 2013 in a lengthy letter. [DE 17-5].  He argued that the contract is ambiguous, and it is likely that the Court will look at Defendant's course of conduct of paying Plaintiff continuing commissions.  He appended a Declaration from Defendant's former Senior Account Executive who was involved with signing up Referral Endorsers such as Plaintiff and calculating the amounts they were to be paid, who said that she had been told to make continuing payments to Plaintiff and those similarly situated. [*Id*. at 5-7].

He further noted that Defense Counsel had not provided a sworn accounting.  He said that the spreadsheet that had been provided was unintelligible by itself.[2]  He rejected the $8,000 offer and countered with a demand of $72,000, inclusive of fees and expenses. [*Id.* at 4].  He noted that "if one were to accept what you passed along as the absolute maximum exposure of your client ($27,000) for damages to date, and doubled that for what our client could reasonably expect to receive in the future, and added a reasonable amount for attorney's fees, it would exceed the $72,000 demand.  If you eschew settlement, who knows, the final amount your client may end up paying may be a large multiple of our client's current demand." [*Id.*].

## LEGAL STANDARD

When a defendant removes a case but the exact amount of damages is unspecified, the

---

[2]Defense Counsel states that he "offered on more than one occasion to provide Plaintiff's counsel with explanations for any or all portions of the accounting provided by Windstream as well as offering to obtain any information that Plaintiff felt he needed to properly evaluate the claim." [DE 17 at 3, n.1].

removing party bears the burden of establishing the jurisdictional amount by a "preponderance of the evidence." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007). In the Eleventh Circuit, a Court must "review the propriety of removal on the basis of the removing documents." *Lowery,* 483 F.3d at 1211. Specifically, the court "considers the document received by the defendant from the plaintiff – be it the initial complaint or a later received paper - - and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Id.* at 1213. If the evidence is insufficient to establish the Court's jurisdiction, "neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Lowery*, 483 F.3d at 1214-15.

Although not raised by either party, Plaintiff's Motion For Remand was filed more than 30 days after the Notice of Removal. Pursuant to 28 U.S.C. §1447(c),

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

The Eleventh Circuit, in *Lowery*, discussed the impact upon a court's analysis of a motion for remand when a Plaintiff files the motion after the 30 day period of time has passed.

> There is only a thirty-day window, therefore, for a plaintiff to challenge the propriety of the *removal* itself, whether that challenge be on the basis of a procedural defect or a lack of subject matter jurisdiction . . . . where the plaintiff challenges removal before judgment but after the thirty-day period has lapsed, the court is no longer considering the propriety of the removal, but instead, whether *subject matter jurisdiction* exists at all. . . .In considering these later challenges to jurisdiction, the court may look to any relevant information the parties may present, up until the time of the challenge to jurisdiction.

483 F.3d at 1213-14, n.64 (emphasis in original).  Here, the challenge being made by Plaintiff

goes to the Court's subject matter jurisdiction.  Consistent with *Lowery*, and with a "factual

attack" on subject matter jurisdiction where "matters outside the pleadings . . . are considered",

*Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990), the Court has considered all of the

documents appended to the papers before it.

## POSITIONS OF THE PARTIES

Plaintiff argues that Defendant failed to meet its burden to prove that the amount in

controversy exceeds $75,000.  He points to Defense Counsel's email wherein he explained that

the absolute maximum Plaintiff could be owed was $27,341.29. Plaintiff argues that Defendant

should have determined the amount in controversy prior to removing the case, rather than solicit

a settlement demand.  He points out that the relevant facts were in the sole possession of

Defendant, and that Defendant had an obligation under Fed. R. Civ. P. 11 to investigate these

facts prior to removal, citing *Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1216-17 (11th Cir.

2007). [DE 11 at 4-8].

Plaintiff further argues that his settlement demand should not be used to establish a basis

for removing the case since it "lacks specific information regarding the amount of damages

Sherman sustained and is not indicative of a reasonable assessment of the value of Sherman's

claims." [*Id.* at 17].  Finally, Plaintiff seeks an award of his reasonable attorneys' fees, costs and

expenses incurred due to Defendant's improper removal. [*Id.* at 17-18].

Defendant opposes Plaintiff's Motion for Remand, arguing that it is Plaintiff's valuation

of the case, not Defendant's, which determines whether removal is proper. [DE 17 at 2].

Defendant points to Plaintiff's second settlement demand of $72,000, quoted above, as rendering

it "difficult to interpret Plaintiff's valuation of his case under any scenario as being less than the jurisdictional threshold of $75,000." [*Id.* at 4].  Defendant goes on to note,

> In fact, only if Windstream were to settle **today** with no further accumulation of Plaintiff's attorneys' fees would Plaintiff be willing to accept $72,000, **a mere $3,000 less** than the jurisdictional minimum.  Therefore, it is abundantly clear that, should Windstream choose not to settle this case for $72,000, at this time, Plaintiff will be seeking in excess of his alleged compromised demand of $72,000, in damages and attorneys' fees.

[*Id.*](emphasis in original).

Defendant also notes that it "offered on more than one occasion to voluntarily remand if Plaintiff would stipulate that he would not seek in excess of $75,000 in attorneys' fees and damages." [*Id.* at 3].   Plaintiff has refused to do so. [*Id.*].

Defendant further argues that attorneys' fees should be factored into the amount in controversy. [*Id.* at 11].  Finally, Defendant argues that Plaintiff's request for attorneys' fees and costs in connection with the removal is unfounded. [*Id.* at 12].

## **DISCUSSION**

Both parties framed their arguments relative to the propriety of the removal.  As noted *supra,* that is not the relevant inquiry before the Court. Nevertheless, the parties' arguments ultimately address the Court's subject matter jurisdiction.  Based upon everything before the Court, Defendant has not made a sufficient demonstration that the amount in controversy requirement has been satisfied.  Defendant places sole reliance for establishing the requisite jurisdictional amount on Plaintiff's settlement demands.  Settlement demands, however, are not determinative. *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1097 (11th Cir. 1994).  The Court

concludes that reliance on Plaintiff's settlement demands is insufficient to demonstrate that the amount in controversy meets the jurisdictional amount.  Plaintiff's first settlement demand clearly indicated that Plaintiff did not have sufficient information to assess the value of his claim. At the time of Plaintiff's second demand, he was still asserting that he did not have an understandable sworn accounting.  His second demand also assumed that he would obtain a declaratory judgment that would entitle him to future commissions.  The amount of those future commissions are necessarily speculative since the conditions precedent to the earning of such commissions have not yet occurred.  They would not be recoverable in the instant action if it went to trial.  Finally, by Defendant's own admission, the recoverable damages are well below the required threshold. Thus, the documents before the Court do not establish federal jurisdiction.

Nor does Plaintiff's refusal to stipulate that his damages will not exceed $75,000 require a different result.  As noted by the Eleventh Circuit in *Williams v. Best Buy Company, Inc.*, 269 F.3d 1316, "There are several reasons why a plaintiff would not so stipulate, and a refusal to stipulate standing alone does not satisfy [defendant's] burden of proof on the jurisdictional issue." *Id.* at 1320.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the above-styled action is **REMANDED** to the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, for want of jurisdiction.  Plaintiff's request for an award of attorneys' fees and

costs is **DENIED**.  Any pending motions are **DENIED AS MOOT**.  The Clerk shall **CLOSE THIS CASE**.

        **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 13th day of June, 2013.

                                    KENNETH A. MARRA
                                    United States District Court